**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forefront Dermatology S.C.,<br><br>         Plaintiff,<br><br>vs.<br><br>Shelly Crossman, et al.,<br><br>         Defendants. | No. CV-22-01895-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Forefront Dermatology S.C.'s ("Forefront" or "Plaintiff") Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6). On November 8, 2022, the Court granted the Motion to the extent it sought a TRO but withheld ruling on its request for a preliminary injunction. (Doc. 10). The parties were ordered to fully brief the Motion, and a Preliminary Injunction/Evidentiary Hearing was held before the Court on November 18, 2022. Having now considered the parties' briefing, the arguments and evidence presented at the Hearing, and the entire record in this matter, the Court issues this Order denying Plaintiff's request for a preliminary injunction.

**I.     BACKGROUND**

In June 2018, Defendant Shelly Crossman began working as a nurse practitioner for Arizona Dermatology Group ("ADG"), which owned and operated several dermatology clinics in the Prescott, Arizona area. (Doc. 1 at 2–3). Ms. Crossman specialized in detecting, treating, and managing dermatological conditions, including skin cancer. (*Id.* at 15). In December 2021, Forefront, a national dermatology practice, acquired ADG and all

its assets. (*Id.* at 6). Forefront and Ms. Crossman entered into an Employment Agreement (the "Agreement"). (*Id.* at 10). Under the Agreement, Ms. Crossman agreed to work for three years at the "Forefront Clinic," located at 830 Ainsworth Drive in Prescott, Arizona. (*Id.* at 6, 10). The Agreement included a non-compete provision, prohibiting Ms. Crossman—upon termination of her employment—from providing certain services within a defined geographic area for a defined duration. (*Id.* at 11–12). After becoming employed by Forefront, Ms. Crossman continued providing the same services she provided for ADG. (*Id.* at 15). She "set her own patient schedule, routinely saw patients and administered treatments and procedures on her own, and was responsible for updating medical records and coding each treatment or procedure for billing purposes." (*Id.* at 16). She also "had access to Forefront's confidential and proprietary information, [including] Forefront's financial data, pricing information, arrangements with insurers and Medicare/Medicaid, and patient lists and medical information." (*Id.*).

In May 2022, Ms. Crossman, Defendant Burt Faibisoff, and an additional partner formed Defendant Prescott Medical and Dermatology Group PLLC ("Prescott Medical"). (*Id.* at 18). Prescott Medical became operational at some point between May and September 2022. (*Id.*). Prescott Medical is located at 804 Ainsworth Drive, which is approximately 0.2 miles from the Forefront Clinic. (*Id.*). Prescott Medical offers "most, if not all, of the same" dermatological services as Forefront. (*Id.* at 19). On August 4, 2022, Ms. Crossman informed Forefront that she would be resigning. (*Id.* at 16). Her final day at Forefront was September 30, 2022. (*Id.* at 17). Ms. Crossman began working as a nurse practitioner at Prescott Medical on October 5, 2022. (*Id.*).

On November 4, 2022, Plaintiff filed the present action. (*See id.*, Complaint). Plaintiff alleges that Defendant Crossman breached the Employment Agreement by (i) resigning over two years prior to the expiration of the Agreement's three-year term and (ii) working at Prescott Medical in violation of the Agreement's non-compete clause. (*Id.* at 22–25). Plaintiff also alleges that she breached her fiduciary duties to Forefront by forming Prescott Medical while under employment with Forefront and by not disclosing

her interest in the competing business. (*Id.* at 25–26). The Complaint also alleges separate-but-related claims against Defendants Faibisoff and Prescott Medical. (*Id.* at 26–29).

On November 7, 2022, Plaintiff moved for a TRO and preliminary injunction, seeking to stop Defendant Crossman from continuing to breach her non-compete agreement with Forefront by enjoining her "from using Forefront's goodwill, confidential patient information, and financial data to unlawfully compete with the Forefront Practice." (Doc. 6 at 3). On November 8, 2022, this Court granted Plaintiff's request for a TRO and temporarily enjoined Defendant Crossman from performing medical services—of the type she provided at ADG and Forefront—at Prescott Medical or at any other location within a 15-mile radius of Forefront's practice locations in Prescott and Prescott Valley. (Doc. 10). On November 18, 2022, the parties appeared before the Court for a Preliminary Injunction/Evidentiary Hearing. (Doc. 32).

## II.     LEGAL STANDARD

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

---

[1] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and internal quotations omitted). Generally, this means that "where the party seeking a preliminary injunction fails to satisfy *any one* of the *Winter* factors, the preliminary injunction must be denied." *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, 92 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 22–23) (emphasis added).

## III.   DISCUSSION

The Court finds that Plaintiff failed to show that it is likely to suffer irreparable harm in the absence of an injunction, that the balance of equities tips in its favor, and that an injunction is in the public interest. Given this failure to make a sufficient showing on three of the four *Winter* factors, the Court will not address the other factor—that is, the Court will not address Plaintiff's likelihood of success on the merits of its claims. *See Video Gaming*, 356 Fed. Appx. at 92, n.3 (citing *Winter*, 555 U.S. 31–33).

### A. Irreparable Harm

To show irreparable harm, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* (citing *Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984)); *see also All. for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original) ("Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."). A finding of irreparable harm also requires a finding that legal remedies, such as damages, are inadequate. *L.A. Mem'l Coliseum*, 634 F.2d at 1202 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

///

Courts have found that the loss of customers, business reputation, and customer goodwill *can* constitute irreparable harm. *See, e.g.*, *Krueger Invs., LLC v. Cardinal Health 110, Inc.*, No. CV 12-618-PHX-JAT, 2012 WL 3028349, at *5 (D. Ariz. July 24, 2012) (citations omitted) ("Courts can consider economic hardship, actual or threatened loss of customers, business reputation, and goodwill in determining the presence and sufficiency of irreparable harm."); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."). Courts reason that, unlike purely economic injuries, these harms are often intangible and cannot be easily valued such that they could be adequately remedied with an award of monetary damages or other legal remedy. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Absent an injunction, Plaintiff asserts that it will suffer irreparable harm because Defendant Crossman will use Forefront's goodwill, patient relationships, and confidential or proprietary information for her own advantage and in direct competition with Forefront. (Doc. 6 at 7–8, 17–18). Plaintiff contends that this will harm its reputation and customer goodwill in the community, cause Forefront to lose patients, and reduce revenue and profits. (*Id.*). In response, Defendants contend that Defendant Crossman has never and will never use Forefront's confidential information, steal any of Forefront's patients, or otherwise use any benefits or knowledge obtained during her time at Forefront to compete with Forefront. (Doc. 13 at 14–15). Defendants argue that Plaintiff relies only on vague allegations of harm and fails to provide any specific facts or evidence demonstrating that the alleged harm is anything more than speculative. (*Id.*). Moreover, to the extent Plaintiff alleges that it will suffer harm to its revenue or profits, Defendants respond that such injuries may be remedied by monetary damages and are thus not "irreparable." (*Id.* at 15).

The Court agrees with Defendants that Plaintiff's assertions of irreparable harm are too speculative, and that Plaintiff has failed to point to evidence in the record showing an actual or significant risk that irreparable harm will occur in the immediate future. Although

the Court does not require that Plaintiff present a quantum of evidence sufficient for summary judgment, Plaintiff must still demonstrate at least some level of factual support demonstrating that Forefront is facing an imminent loss of patients, reputation, or goodwill *unless* Defendant Crossman is enjoined from continuing her work with Prescott Medical. Plaintiff failed to do this.

First, Plaintiff failed to establish that Defendant Crossman is actively soliciting Forefront patients or that she intends to steal Forefront patients in the future. At the Hearing, Defendant Crossman testified that she has never solicited or otherwise encouraged any Forefront patients to follow her to Prescott Medical or to otherwise receive services at Prescott Medical. Likewise, Dean Stokes testified that he was never told by any patient that Defendant Crossman had referred them to Prescott Medical and that Prescott Medical has never solicited Forefront patients. For its part, Plaintiff did not present any witnesses or other evidence indicating that such solicitation of patients occurred or will occur in the future. In its Complaint, Plaintiff alleges that it is "informed and believes that during her employment at Forefront, [Defendant] Crossman was soliciting Forefront's patients and employees on behalf of Prescott [Medical]." (Doc. 1 at 22). Even taking this factual allegation as true, it still fails to demonstrate a substantial risk that Defendant Crossman has continued such solicitation or that she will do so in the immediate future. Such past conduct only evidences conduct by Defendant Crossman that has already occurred. Injunctive relief would not remedy such conduct; rather, such conduct is more easily quantifiable and could be remedied through damages. Although it may not be surprising that Defendant Crossman and her colleague deny soliciting or stealing Forefront patients, it is Plaintiff's burden to prove irreparable harm and Plaintiff has simply failed to offer any evidence to contradict or undermine their testimony.

This is not to say that there is *no* risk of patients leaving Forefront and going to Prescott Medical. Indeed, the two clinics are just 0.2 miles apart and the parties do not dispute that several patients have already moved or requested that their records be transferred to Prescott Medical. The problem with this evidence—for Plaintiff's sake—is

that there is nothing in the record to indicate that they moved because of solicitation or encouragement *from Defendant Crossman*. Plaintiff only seeks to enjoin Defendant Crossman from practicing at Prescott Medical. Thus, even if this Court were to enjoin Defendant Crossman from practicing at Prescott Medical, there is no reason to believe that patients would choose to stay at Forefront as a result. After all, patients are free to seek medical services from wherever they choose. It is also worth noting that Forefront has apparently *referred* numerous patients to Prescott Medical. Not only does this undermine Plaintiff's assertion that it will be harmed by the loss of patients, it also makes it even more difficult to see how enjoining Defendant Crossman would do anything to remedy the alleged harm of losing patients.

Plaintiff's alleged harm with respect to stolen confidential or proprietary information fails to meet the irreparable harm standard for the same reasons. Again, Plaintiff has not presented any evidence that Plaintiff stole any sensitive information from Forefront or that she intends to use such information to Forefront's detriment. Rather, Plaintiff merely lists the various types of confidential or proprietary information that Defendant Crossman had access to (such as patient records, billing practices, referring sources, and payor arrangements) and asserts, without any evidence, that Defendant Crossman chose to stay at Forefront for five additional months—after forming Prescott Medical in May 2022—"to leverage her status at Forefront to benefit Prescott [Medical]." (Doc. 6 at 7). Thus, the best Plaintiff does is allege facts indicating that Defendant Crossman had the *opportunity* to steal sensitive information—given her prominent position and responsibilities at Forefront—and that Defendant Crossman may have had a *motive* to do so—given that she continued working for Forefront for five months after Prescott Medical was established. Such facts may indicate a *possibility* of harm, but they do not give rise to a *likelihood* of immediate, irreparable harm. *See All. for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original) ("Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."). As with the allegations of impermissible patient solicitation, Defendant Crossman and

Stokes testified that Defendant Crossman never took any confidential information from Forefront and, again, Plaintiff has not provided any evidence that would indicate otherwise.

Finally, Plaintiff's assertion that it will lose revenue and profits because of Defendant Crossman's conduct, (*see* Doc. 6 at 8), also fails to meet the irreparable harm standard. Not only is there no evidence to substantiate the allegation, the loss of revenue and profits is an injury better remedied by money damages and is not considered "irreparable" for purposes of obtaining a preliminary injunction. *See L.A. Mem'l Coliseum*, 634 F.2d at 1202 (noting that monetary injury, such as lost revenues, "is not normally considered irreparable").

In sum, Plaintiff has failed to demonstrate a likelihood of irreparable harm in the event Defendant Crossman is not enjoined. Plaintiff's irreparable harm argument is too speculative, as it relies only on Plaintiff's assertions that Defendant Crossman had the opportunity and motive to solicit patients from Forefront, leverage Forefront's goodwill, and steal Forefront's confidential information. At best, Plaintiff has demonstrated a *possibility* of irreparable harm. This falls short of what is required from Plaintiff.

### B. Balance of Equities/Hardships

As to the third required element for a preliminary injunction, the Court finds that the balance of hardships tips in Defendants' favor. When analyzing this element, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24; *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for [an] injunction will have on the respective enterprises."). "In assessing whether a party has met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" *Video Gaming*, 356 Fed. Appx. at 93 (quoting *L.A. Mem'l Coliseum*, 634 F.2d at 1203).

Here, even if the Court were to enjoin Defendant Crossman from providing dermatological services within *five* miles of Forefront's locations—as opposed to the

fifteen-mile geographic restriction requested by Plaintiff—she would still be precluded from making a living virtually anywhere in the Prescott area. (*See* Doc. 20 at 93 (showing that five-mile geographic restriction still covers nearly all of Prescott and Prescott Valley)). Plaintiff argues that Defendant Crossman would "suffer little to no harm" because she could still perform *other* types of medical services at any location she prefers. (Doc. 6 at 15). While Plaintiff is correct that the injunction would not limit Defendant Crossman with respect to providing most non-dermatological services, the solution only raises other, different types of hardships. In nearly a decade of being a nurse practitioner, Defendant Crossman has worked exclusively in the dermatological field. Though she worked in a hospital as a registered nurse from 2003 to 2013, she he has no relevant experience with providing any other type of service since she became a nurse practitioner in 2013. Although Plaintiff makes it sound easy, the Court is not persuaded that Defendant Crossman could simply shift to providing entirely different medical services overnight or that doing so would not be accompanied by its own unique hardships.

Plaintiff also suggests that Defendant Crossman could simply commute to areas *outside* of the restrictive covenant's geographic scope and perform dermatological services there. (*Id.*). Indeed, Plaintiff is correct that the injunction would not limit Defendant Crossman from performing restricted services *outside* of the Prescott and Prescott Valley areas. Again, however, this suggestion does not resolve all hardships facing her. Defendant Crossman would first be tasked with *finding* a job outside of Prescott and Prescott Valley. Given the largely rural nature of the region, this may be more difficult than Plaintiff makes it seem. Moreover, even if she was able to find work in another community, the fact remains that she would be faced with all the hardships that accompany a new job at a new location. She would no longer be able to work with Stokes or Defendant Faibisoff—two colleagues with whom she has developed a good working relationship. She would have to commute long distances to get to work. She would have to develop relationships with other physicians and medical assistants, learn the day-to-day intricacies of an entirely new medical clinic or facility, and start from scratch with an entirely new group of patients. The

Court does not find these hardships to be insurmountable, but it does note that they exist and cannot be overlooked.

On the other hand, Plaintiff has not shown that they will face comparable hardships if an injunction is not issued. For starters, Forefront is a large, multi-state medical provider with numerous locations around the country. Forefront is therefore better positioned to overcome any hardships resulting from the conduct of a single employee than would be a local or individually owned medical provider. Moreover, and as discussed above, the alleged harms to Plaintiff are speculative. Plaintiff has not demonstrated any evidence to suggest that Defendant Crossman will steal Forefront's patients, leverage Forefront's goodwill, or impermissibly use Forefront's confidential information. More importantly, the proposed injunction is only aimed at enjoining Defendant Crossman's conduct. Even if it were issued, Prescott Medical would presumably continue operations as usual—that is, Prescott Medical would continue offering the same dermatological services to the same population of Prescott and Prescott Valley residents from a clinic located just 0.2 miles from Forefront. Thus, the injunction would do nothing to stave off the competition that Prescott Medical presents to Forefront or otherwise prevent patients from leaving Forefront in favor of Prescott Medical.

This is not to say that Plaintiff will suffer no harm whatsoever in the absence of injunctive relief. Plaintiff has demonstrated that there is at least a *possibility* that Defendant Crossman could steal patients, leverage Forefront's goodwill, and impermissibly use confidential information she obtained at Forefront. An injunction barring her from practicing dermatological services at Prescott Medical or at any other location within some distance of Forefront would reduce that possibility to some extent. In the end, however, the "balance of equities" requirement asks the Court to weigh the parties' respective hardships, and, in this case, the Court finds that the balance weighs in favor of Defendants.

**C. Public Interest**

Finally, the Court finds that the public interest requirement weighs against a preliminary injunction. "In exercising their sound discretion, courts of equity should pay

particular regard for the public consequences in employing the extraordinary remedy of an injunction." *Pure Wafer Inc. v. City of Prescott*, 275 F. Supp. 3d 1173, 1179 (D. Ariz. 2017) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a[n] injunction requires [the court] to consider whether there exists some critical public interest that would be injured by the grant of [injunctive] relief." *Id.* (citation omitted). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002).

Under Arizona law, restrictive covenants are generally disfavored and "strictly construed against the employer." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 367 (1999). "This disfavor is *particularly* strong concerning such covenants among physicians because the practice of medicine affects the public to a much greater extent." *Id.* (emphasis added); *see also Phx. Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 60 (Ct. App. 1989) ("We agree that employment covenants restricting physicians in the practice of medicine involve public policy implications and should therefore be closely scrutinized."). This disfavor is rooted in the idea that the public has an interest in minimizing restrictions to medical care and that patients should be free to access the provider of their choosing. In this case, an injunction would undermine this policy interest because it would impede Defendant Crossman's ability to provide medical services in the Prescott and Prescott Valley communities and thereby preclude her patients from accessing her services.

That said, Plaintiff argues that *other* public interests would be served by an injunction in this case. Namely, Plaintiff argues that an injunction would align with the public's interest in "protecting a company's right to proprietary information, business operations, and contractual rights." (Doc. 6 at 16). To be sure, this Court and others recognize these as valid public interests. *See, e.g.*, *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) (citation omitted) ("Courts have held that the public interest is served by protecting a company's right to proprietary information, business operations, and contractual rights."). That said, the Court finds that these interests would not be

significantly advanced by an injunction in this case because there is minimal evidence that Defendant Crossman plans to steal Forefront's customers or to use Forefront's confidential information. *See Pure Wafer*, 275 F. Supp. 3d at 1179 (citation omitted) ("With regard to the likely public interest consequences of the injunction, 'such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence.'"). To the extent that Defendant Crossman has *already* harmed Plaintiff's contractual rights—for example, by resigning from her Employment Agreement over two years before it was set to expire or by forming and moving to a competing business just 0.2 miles away—the Court notes that this case is only just beginning. With today's Order, the Court is merely denying Plaintiff's request for injunctive relief—a form of relief that is notoriously "extraordinary and drastic" and one that should only be granted when absolutely necessary. *See Mazurek*, 520 U.S. at 972. Plaintiff's claims against Defendants—including its breach of contract claims against Defendant Crossman—remain largely un-litigated. With the aid of discovery, Plaintiff may uncover more evidence to support those claims, and, in the end, Plaintiff may obtain damages or some other relief to remedy the harms it suffered because of Defendants' conduct. In other words, the public's interests in protecting a party's business and contractual rights are not being overlooked, for the protection of those interests is at the basis of Plaintiff's claims. For purposes of issuing a preliminary injunction, however, the public interest requirement weighs in Defendants' favor.

### IV.    CONCLUSION

In sum, the Court finds that Plaintiff failed to satisfy the irreparable harm, balance of equities, and public interest prongs of the *Winter* test. Thus, Plaintiff's request for a preliminary injunction must be denied.

///
///
///
///
///

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6)—which was granted to the extent Plaintiff sought a temporary restraining order—is now **denied** to the extent Plaintiff seeks the issuance of a preliminary injunction.

Dated this 22nd day of November, 2022.

Honorable Steven P. Logan
United States District Judge